UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

RALPH BAZE                                                              PLAINTIFF

v.                                              CIVIL ACTION NO. 5:10CV-P86-R

HOBERT HUDDLESTON *et al.*                                              DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court on initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, a portion of the claims will be dismissed and others will continue.

### I.

Plaintiff Ralph Baze, a death-row inmate currently incarcerated in the Kentucky State Penitentiary ("KSP"), filed a *pro se* complaint against Hobert Huddleston, Unit Administrator of Six Cellhouse at KSP; Tom Simpson, former KSP Warden; LaDonna Thompson, Commissioner of the Kentucky Department of Corrections; Duke Pettit, KSP Grievance Coordinator; and the Kentucky Department of Corrections (KDOC). Plaintiff sues Defendant Simpson in his individual capacity and Defendants Huddleston, Thompson, and Pettit in their individual and official capacities. He alleges constitutional violations under 42 U.S.C. § 1983; violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132; and violations of state law. As relief, he seeks compensatory and punitive damages and injunctive and declaratory relief.

Plaintiff alleges that following a knee injury in May 2009, he was prescribed a set of wooden crutches, pain medication, an ace bandage, and orders to keep weight off of his knee. Upon arrival at Cellhouse Six, where he resides, Plaintiff was informed that he would not be allowed to keep the crutches. Plaintiff contends that the order came directly from Defendant

Huddleston, who believed that a crutch could be used as a weapon. Defendant Huddleston would not allow the crutches to be in the recreation area or on the yard but told Plaintiff he could use the crutches in his cell. Plaintiff told Officer Harden that if such limitation were put on the use of his crutches, then he would sue Defendant Huddleston. Officer Harden relayed the message to Defendant Huddleston, who then ordered Plaintiff to be confined to the prison infirmary. Thereafter, Plaintiff was escorted to the infirmary and placed in a dry cell. Plaintiff asked Nurse Practitioner Hiland if there were a medical reason for his confinement in the infirmary. Nurse Practitioner Hiland answered in the negative and advised Plaintiff that he was in the infirmary on Defendant Huddleston's orders. Plaintiff asked to be returned to his cell. He was told that he could return but that Defendant Huddleston gave orders that Plaintiff could not keep the crutches.

Plaintiff alleges that if he stayed in the prison infirmary where he could keep the crutches, he lost his outside recreation, access to the law library, and church services. In leaving the infirmary, he was denied his crutches, but if he could stand the pain, he could have access to outside recreation, the law library, and church services. Plaintiff also advises that he has been using a "long handle squeegi as a crutch" when and where he could and that other inmates have helped him go to and from the shower and to a picnic table to get some fresh air. He indicates that over the following months his knee pain continued and that he believes he now has a torn ACL. He also claims that he has a history of back problems and, without crutches, he has been forced to walk on his injured leg causing further injury to his leg and back.[1]

---

[1] It is unclear from the complaint how long Plaintiff was subjected to the conditions about which he complains and whether he is still being subjected thereto.

Plaintiff alleges that no inmate on death row had been denied crutches in over twenty years, and he attaches affidavits from several other death-row inmates in support of that allegation.

Plaintiff reports writing letters to Defendant Thompson and Simpson about Defendant Huddleston singling him out to inflict unnecessary pain and claims that they failed to correct or take disciplinary action against Defendant Huddleston. He also reports filing grievances, which Defendant Pettit rejected and Defendants Simpson and Thompson denied.

**II.**

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

3

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

### III.

#### A. *42 U.S.C. § 1983*

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

##### 1. *All claims against the KDOC and official-capacity claims for damages against all other Defendants*

A state, its agencies,[2] and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491

---

[2] The Kentucky Department of Corrections is a department within the Justice and Public Safety Cabinet of the Commonwealth of Kentucky. Exec. Order No. 2004-730 (July 9, 2004); KY. REV. STAT. ANN. § 12.250.

U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Furthermore, official-capacity claims for damages against state officials and all claims (damages and equitable relief) against the KDOC, a state entity, are barred by the Eleventh Amendment to the United States Constitution. *Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *Daleure v. Commonwealth of Kentucky*, 119 F. Supp. 2d 683, 687 (W.D. Ky. 2000) ("The Eleventh Amendment protects the Kentucky state government and the Kentucky Department of Corrections from suit."). Accordingly, all claims against the KDOC and all official-capacity claims for damages against all other Defendants must be dismissed.

### *2. Defendant Huddleston*

Plaintiff alleges that Defendant Huddleston denied him prescribed medical treatment in the form of crutches in violation of the Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment. He also alleges that Defendant Huddleston retaliated against him by moving him to the prison infirmary, where he was placed in a dry cell and not allowed outside recreation, access to the law library, or participation in church services.

The Court will allow the First Amendment claim of retaliation, the Eighth Amendment claim of deliberate indifference, and the Fourteenth Amendment equal-protection claim to proceed against Defendant Huddleston in his individual capacity for all relief and in his official capacity for equitable relief.

### *3. Defendants Simpson and Thompson*

As to Defendants Simpson and Thompson, Plaintiff sues them due to their failure to take disciplinary or other action to curb Defendant Huddleston from violating his rights and due to

5

their involvement in the grievance process. These facts are insufficient to subject these Defendants to liability under § 1983.

Defendant Simpson's and Thompson's positions as Warden and Commissioner, respectively, do not automatically make them liable for the actions of their subordinates. "Respondeat superior[3] is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). "Nor can the liability of supervisors be based solely on the right to control employees, or simple awareness of employees' misconduct." *Id.* (internal quotations omitted). "In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). In other words, "liability under § 1983 must be based on active unconstitutional behavior." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "A supervisor's awareness of allegations of unconstitutional conduct and failure to act are not a basis for liability." *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003). Thus, the fact that Defendants Simpson and Thompson were aware of Plaintiff's complaints is not enough to subject them to liability under § 1983 for Defendant Huddleston's actions.

Likewise, Defendants' adjudication of Plaintiff's grievances does not subject them to liability under § 1983. There is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). By the same token, a plaintiff cannot maintain a claim against a prison official

---

[3]Respondeat superior is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." BALLENTINE'S LAW DICTIONARY (3d ed. 1969).

6

based solely on his or her denial of the plaintiff's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee*, 199 F.3d at 300). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."). Thus, where the only allegation against a defendant relates to the denial of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged denial of medical treatment. *Id.*

Because Plaintiff's allegations against Defendants Simpson and Thompson relate to their supervisory roles and arise out of their decisions to deny Plaintiff's administrative grievance, the claims against Defendants Simpson and Thompson must be dismissed.

*4. Defendant Pettit*

Plaintiff claims that Defendant Grievance Coordinator Pettit, in rejecting several of his grievances, denied him the right to petition government for the redress of grievances under the First Amendment and denied him due process under the Fourteenth Amendment. "[T]here is no inherent constitutional right to an effective prison grievance procedure," *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001), and "[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x at 841. Plaintiff, therefore, fails to state a claim upon which relief may be granted against Defendant Pettit.

## B. Title II of the ADA

The Court will allow Plaintiff's Title II ADA claim to proceed against all Defendants for all relief.

## C. State-law claims

Plaintiff additionally raises "State Tor[t] claims . . . under KRS § 508.100 Criminal Abuse in the First degree, KRS § 522.020(a)(b)(c) Official Misconduct, KRS § 506.040(1)(a)(b) Criminal Conspiracy, KRS § 524.055 Retaliation against a participant in the legal process, KRS § 502.050(1)(a)(b)(c) Corporate Liability."

Each of these Kentucky statutes is a criminal statute imposing criminal sanctions, not any civil tort remedies, and this Court is without jurisdiction to direct criminal prosecution against Defendants. *Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1986) ("Authority to initiate a criminal complaint rests exclusively with state and federal prosecutors.").

Accordingly, all state-law claims will be dismissed.

**IV.**

In conclusion, the Court will allow the following claims to proceed: (1) the First Amendment claim of retaliation, the Eighth Amendment claim of deliberate indifference, and the Fourteenth Amendment equal-protection claim to proceed against Defendant Huddleston in his individual capacity for all relief and in his official capacity for equitable relief; and (2) the Title II ADA claim against all Defendants for all relief. In permitting these claims to proceed, the Court passes no judgment on the merits of the action.

The Court will enter a separate Scheduling Order governing the development of the continuing claims and will enter a separate Order dismissing all other claims.

Date:

cc: Plaintiff, *pro se*
 Defendants
 General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
 Attorney General, Commonwealth of Kentucky
4413.005