# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:10-CV-00086-R

**RALPH BAZE**                                                                                      **PLAINTIFF**

v.

**HOBERT HUDDLESTON**                                              **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff Ralph Baze's Motion to Reconsider (DN 15). Defendant has not responded and the time to file a response has passed. This motion is now ripe for adjudication. For the reasons that follow, Plaintiff's motion is DENIED.

Also before the Court is Plaintiff's Motion Requesting Preliminary Injunctive Relief (DN 16). Defendant has responded (DN 21) and Plaintiff has replied (DN 22). This motion is now ripe for adjudication. For the reasons that follow, Plaintiff's motion is DENIED.

Also before the Court is Plaintiff's Motion Requesting the Clerk of Courts to Provide Copies of the Record to the Defendant (DN 17). For the reasons that follow, this motion is DENIED.

## BACKGROUND

Plaintiff Ralph Baze, *pro se*, is a prisoner currently incarcerated at Kentucky State Penitentiary (KSP). Baze is on Kentucky's death row and has exhausted his direct appeals; both parties admit that he is very near his execution.

In Baze's complaint, he alleges that a knee injury he sustained in May of 2009 has not been properly treated by the medical staff at KSP. Specifically, Baze says that as part of his treatment for the injury, he was prescribed a set of crutches and ordered to keep weight off his

1

knee. He claims however that prison officials refused to allow him to use the crutches in his normal cell block, as they feared Baze may use them as a weapon. Baze was subsequently confined to KSP's infirmary to allow him use of the crutches, but was given the option to return to his normal housing if he could go without using them. According to Baze, as confinement to the infirmary meant that he did not have normal access to outside recreation, the law library, or church services, he chose to return to his own cell.

Stemming from this behavior by prison officials, Baze brought this action against four prison officials in their official and individual capacities as well as the Kentucky Department of Corrections ("KDC"), claiming constitutional violations under 42 U.S.C. § 1983; violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and violations of state law. He says that since the decision to deprive him of the crutches, the pain in his legs and back has increased substantially. He further claims that inmates on death row are typically not denied the use of crutches and this particular decision by prison officials is simply a callous action directed at him. For relief, he seeks compensatory and punitive damages as well as injunctive and declaratory relief.

On October 6, 2010, the Court dismissed all but one of the parties named in the Complaint, Hobert Huddleston, Unit Administrator of Six Cellhouse at KSP. DN 10.

## ANALYSIS

### I. Motion to Reconsider

In his Motion to Reconsider, Baze requests that the Court reconsider its earlier ruling to dismiss three of the Defendants, Tom Simpson (former KSP Warden), LaDonna Thompson (Commissioner of the KDC), and the KDC itself.

In deciding to dismiss Simpson and Thompson, the Court noted that Baze had brought them into this action "due to their failure to take disciplinary or other action to curb Huddleston from violating his rights and due to their involvement in the grievance process."[1]  DN 10 at 6.  It then decided that as alleged, Baze's complaint against Simpson and Thompson was inappropriate since a claim under § 1983 could not stand strictly upon a theory of respondeat superior.  *See McQueen v. Beecher Cnty. Schs.*, 443 F.3d. 460, 470 (6th Cir. 2006).  The Court also decided that to the extent Baze's claims were predicated on Simpson's and Thompson's denials of his grievances, these claims were also improper since prisoners may not bring a claim against a prison official based solely on the denial of a grievance.  *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).  With regard to the KDC, the Court stated that an action under § 1983 would not lie because an arm of the state government is not a "person" amenable to suit under the statute and because Kentucky was immune from suit under the Eleventh Amendment.

"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment."  *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008). "A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991).  Since there is an interest in the finality of a decision, a court should grant motions for reconsideration "only if the prior decision appears clearly to be legally or factually erroneous." *Mobley v. Warden London Corr. Inst.*, No. 2:09-cv-638, 2010 WL 3586964, at *2 (S.D. Ohio Sept. 13, 2010); *see Rodriguez v. Tenn. Laborers Health &*

---

[1] Baze filed a number of grievances protesting his circumstances, however these were denied by Simpson and Thompson.

*Welfare Fund*, 89 F. App'x. 949, 959 (6th Cir. 2004) ("Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice.").

In support of his motion, Baze presents a number of cases decided outside of the Sixth Circuit that ostensibly show that Simpson and Thompson are subject to suit even if they were merely supervisors. He also points to a Kentucky Court of Appeals decision that he claims alters the definition of "person" as applied to § 1983 and the KDC. However, Baze's precedent and his rationale do not withstand careful analysis. The law surrounding supervisory liability for prisoner cases under § 1983 is clear: "[i]n order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). It is also undisputed that Simpson's and Thompson's roles in denying Baze's earlier grievances do not make either subject to a proper legal action. *Grinter*, 532 F.3d at 576. Thus, Baze's complaint does not contain a sufficient factual basis upon which a plausible claim against Simpson and Thompson has been made. Turning to the KDC, the Kentucky Court of Appeals case cited by Baze is irrelevant. It does not impact the long-standing precedent that departments of state government as not "persons" as defined under the § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989). As such, his argument is without merit.

In sum, Baze has failed to present any new law or facts that would persuade the Court to reconsider its earlier decision to dismiss Tom Simpson, LaDonna Thompson, and the KDC as

Defendants in this matter. Accordingly, this Motion to Reconsider is DENIED.

## II. Motion Requesting Preliminary Injunction

Baze next requests preliminary injunctive relief, requiring KDC and the warden of KSP to arrange for a medical examination of his knee by an outside specialist. Baze claims that such drastic action is necessary, as the prison's infirmary does not have an MRI machine, he has never received a proper examination, and he is still experiencing extreme pain. Defendant objects to this motion, urging that Baze has not put forward the necessary proof for a preliminary injunction and that the security concerns with transporting a death-row inmate outside the prison are too great to grant such relief.

"The granting or denial of a preliminary injunction is within the sound judicial discretion of the trial court." *Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 260-61 (6th Cir. 1977) (citations omitted). Courts rely upon four factors in determining whether to grant or deny a preliminary injunction:

> (1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits; (2) Whether the plaintiffs have shown irreparable injury; (3) Whether the issuance of a preliminary injunction would cause substantial harm to others; (4) Whether the public interest would be served by issuing a preliminary injunction.

*Id.* at 261 (citations omitted). The factors should be "balanced[,]" are "not prerequisites that must be satisfied[,]" and "are not meant to be rigid and unbending requirements." *Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992) (citations omitted). Federal Rule of Civil Procedure 52 "requires a district court to make specific findings concerning each of these four factors, unless fewer are dispositive of the issue." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985) (citing *United States v. School Dist. of Ferndale*,

5

577 F.2d 1339, 1352 (6th Cir. 1978)); *see* Fed. R. Civ. P. 52. Beside these standard requirements, the Prison Litigation Reform Act limits the scope of injunctive relief a prisoner may receive:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1).

After reviewing the record before it, the Court makes the following findings of fact. First, although Baze may be experiencing some pain in his knee, he is not suffering from a severe injury. Nurse Practitioner Chanin Hiland submitted an affidavit with Defendant's response in which she affirms that Baze's knee injury is a simple ligament strain. She has come to this conclusion through her own physical examination of Baze and after a radiologist reviewed x-rays of Baze's knee and found nothing abnormal. She also states that Baze takes Naproxen, a prescription pain medication, twice a day, and as a result he is not in excessive pain. Second Hiland says that transport of Baze outside of the prison is unnecessary both because he does not need an MRI and the infirmary in KSP has all the necessary equipment to treat him. She says that considering the mildness of his injury, she and the rest of the medical staff at KSP are in agreement that simple rest and a regime of anti-inflammatory medication are best recuperative strategy. Finally, Hiland offers that the primary reason Baze has not been sent for further evaluation with an outside specialist is not related to the security concerns of the staff, but because such a measure is medically unnecessary in light of his moderate injury.

Although Baze makes a variety of assertions rebutting Hiland's statements about his medical condition, they are insufficient to persuade this Court. Baze has no medical training and therefore is unqualified to diagnose the problems with his knee. To the extent he is injured, the staff of KSP is providing Baze with medication to assuage whatever pain he may be suffering. Ultimately, although Baze's contentions run counter to those of Hiland, the Court is persuaded by her opinion of his condition.

With these findings of fact, the Court next makes the following conclusions of law. First, Baze is unlikely to succeed on the merits of his case. Regarding his Eighth Amendment claims, to triumph on this theory, a prisoner "must show that the defendant acted with deliberate indifference to his basic [medical] needs." *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009). Precedent distinguishes between violations under the Eighth Amendment and situations where a prisoner has been the recipient of inadequate medical treatment. This circuit has cautioned that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). The record before the Court shows that KSP's health care professionals have been attentive and are working to eliminate the pain from which he is suffering with prescription medicine. He has also been examined on several occasions by different medical providers, all of whom agree that the injury to his knee is not severe and he does not need to visit a specialist. While Baze may not have received the type of treatment or medication he desires, precedent is unambiguous that under the Eighth Amendment, difference of opinion between the patient and healthcare professionals is not tantamount to a constitutional

7

claim.  *See Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983); *Tolbert v. Eyman*, 434 F.2d 625 (9th Cir. 1970); *Alexander v. Fed. Bureau of Prisons*, 227 F. Supp. 2d 657, 666 (E.D. Ky. 2002).  In the face of these clear rulings, the Court believes Baze is unlikely to succeed on the merits of this claim.

Baze also claims violations of his due process rights under the Fourteenth Amendment, his right to free speech under the First Amendment, and criminal abuse under Kentucky law. However these claims are not a basis under which Baze would be entitled to visit to a specialist to examine his knee.  The Court therefore does not evaluate whether he would likely prevail under these theories.[2]

In the Court's second conclusion of law, it agrees with Defendant that this injunction is not in the public's interest.  The safety risk of transporting a death-row inmate outside of the prison in which he is housed cannot be understated.  Although the Court is able to conceive of a scenario where the transport of an inmate in desperate need of complex medical care would be appropriate, such is not the instant case.  All the necessary tools to remedy Baze's injury are available in KSP.  Consequently, there is absolutely no public interest in transporting a dangerous, violent felon to a specialist for second opinion.

The Court concludes that it is doubtful whether Baze will succeed on the merits of his case and it is not in the public's interest to remove him from KSP.  Accordingly, his Motion for a Preliminary Injunction is DENIED.

### III. Motion Requesting Clerk of Court to Provide Defendant with all Documents

---

[2] Although the Court chooses not to address the probability of Baze's success on these claims, it is dubious that the remainder of Baze's action rests upon on a solid legal or factual foundation.

8

**Already Submitted**

Finally, Baze requests that the Court order the clerk of court to provide Defendant with the documents that Baze has submitted on the record in this action. He argues that guards at KSP have retaliated against him for filing this law suit, and that this motion will serve to apprise the authorities at the prison of this alleged mistreatment.

While the Court chooses to deny this motion, it does so knowing that Defendant has ready access to the documents in the record to which Baze is alluding. The Court further believes that prison officials will act swiftly in stopping this harassment if it has indeed occurred.

Accordingly, this motion is DENIED.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED THAT Plaintiff's Motions (DN 15; DN 16; DN 17) are DENIED.