UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:10-CV-00086-R

**RALPH BAZE**                                                          **PLAINTIFF**

**v.**

**HOBERT HUDDLESTON, et al.**                              **DEFENDANTS**

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' motion for summary judgment (DN 59). Plaintiff has responded (DN 64), Defendants have replied (DN 65), and Plaintiff has submitted a sur-reply (DN 66). This matter is now ripe for adjudication. For the reasons that follow, Defendants' motion is GRANTED IN PART AND DENIED IN PART.

## BACKGROUND

Plaintiff Ralph Baze, *pro se*, is a prisoner currently incarcerated at Kentucky State Penitentiary (KSP). Baze is on Kentucky's death row and has exhausted his direct appeals; both parties admit that he is very near his execution. He received the death penalty for the murder of two Kentucky law enforcement officers.

Baze alleges that on May 19, 2009, he twisted and injured his knee.[1] The next day, he was examined by KSP's medical staff and diagnosed with a minor strain. The staff told him to rest the knee and gave him non-prescription anti-inflammatories. There is a dispute over

---

[1] The parties disagree about the severity of Baze's injury. The medical records and affidavits from medical professionals characterize the injury as minor and include statements from prison officials that Baze could walk uninhibited in the days immediately following his accident. On the other hand, Baze submits the affidavits of other prisoners that paint a desperate picture of Baze forced to use mops and brooms to hobble around KSP for months on end.

1

whether KSP's staff prescribed Baze crutches or simply allowed him to use them as a convenience to take weight off his knee. When Baze returned to death row, the area's supervisor Hobert Huddleston initially permitted Baze to use his crutches in his cell, but the use of crutches outside his cell was not approved due to security concerns. DN 64-2 at 2. These restrictions were necessary according to Huddleston out of fear the crutches could be used as a weapon against the guards or other prisoners. *Id*.

Upon learning of these restrictions, Baze claims he informed Huddleston that he would take legal action for limiting his use of the crutches. Sometime after this conversation Baze was escorted back to the infirmary where he was given the option to remain with the crutches or to return to death row without them. Baze chose to return to his cell. He states he did so because inmates confined to the infirmary do not have access to KSP's other facilities, like the recreation yard, law library, or chapel.

On May 27, 2009, Baze filed a prisoner grievance claiming Huddleston interfered with his medical treatment by denying him the use of the crutches. He further alleged that Huddleston's decision represented a form of retaliation since inmates on death row are not typically denied crutches if they are medically necessary. The grievance committee found no wrongdoing on the part of Huddleston and Baze was unsuccessful in his subsequent grievances.

Baze now brings this action against the Kentucky Department of Corrections ("KDOC"), as well as Huddleston, Tom Simpson, LaDonna Thompson, and Duke Pettit in their official and individual capacities. He claims constitutional violations of his Eighth Amendment and equal protection rights under 42 U.S.C. § 1983, and a violation of Title II of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12132.[2]  He claims that since the decision to deprive him of the crutches, the pain in his legs and back has increased substantially.  He further advances that inmates on death row are typically not denied access to crutches, and this particular decision by prison officials was an unnecessary and callous act.  For relief, he seeks compensatory and punitive damages.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby,*

---

[2] In a previous order, the Court dismissed the Eighth Amendment claims against all Defendants except Huddleston, along with all of Baze's theories of recovery under state law. Order, DN 11.  Moreover, while Baze makes allegations against Simpson, Thompson, and Pettit for his First Amendment retaliation claim, he does not provide any proof they were involved in the decision to move Baze from death row to the infirmary.  Overall, Baze fails to allege any cognizable claim against these Defendants and for that reason they are noticeably absent from the analysis below.

*Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### I. Eighth Amendment

The gravamen of Baze's allegations under the Eighth Amendment centers on Huddleston prohibiting his use of crutches on KSP's death row.  Baze says Huddleston improperly interfered with his medical care, which is tantamount to cruel and unusual punishment.

Under 42 U.S.C. § 1983, Congress did not seek to set out substantive rights, but instead provide a vehicle through which individuals could rectify deprivations of previously established rights.  The section has two requirements: "(1) state action that (2) deprived an individual of federal statutory or constitutional rights." *Flint v. Ky. Dept. of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citations omitted).  Thus, Treat must show Defendants acted under state law to deny his rights under the Eighth Amendment.

The Sixth Circuit has routinely held that for a prisoner "[t]o establish an Eighth Amendment violation, the plaintiff must show that the defendant acted with deliberate indifference to his basic needs." *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009).  In *Jones v. Muskegon Cnty.*, the court of appeals described the framework necessary for a prisoner to prove a medical claim under the Eighth Amendment.

A Section 1983 claim asserting a constitutional violation for denial of medical care

4

> has objective and subjective components. The objective component requires the existence of a sufficiently serious medical need. Such a medical need has been defined as one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. The subjective element requires an inmate to show that prison officials have a sufficiently culpable state of mind in denying medical care.

*Jones v. Muskegon Cnty*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotation marks and citations omitted). Denial of medical care can include interfering with treatment or care of a serious medical need previously prescribed by health care professionals. *McCracken v. Coshocton Cnty.*, 82 F.3d 418, at *1 (6th Cir. 1996) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)).

Huddleston argues summary judgment is warranted because KSP's medical staff did not "prescribe" the crutches as treatment, but merely provided them to Baze as a convenience. He concludes that he did not interfere with Baze's care because the crutches were medically unnecessary. The evidence supports this contention. The medical records indicate Baze was "given" crutches for use along with medicine to treat his knee strain. DN 64-5 at 3. Medical personnel and prison staff have submitted affidavits that the crutches were not prescribed as a part of his medical care. Hiland Aff. ¶ 5, DN 59-2 at 1; Huddleston Aff. ¶ 13, DN 59-3 at 2. Baze submits affidavits from fellow prisoners that claim the crutches were prescribed, but these prisoners were not present when Baze saw KSP's medical staff. Ultimately, his response to Defendants' motion rests on the presumption that the very medical staff that gave him the crutches have submitted false affidavits to the contrary. Such a speculative foundation is insufficient to permit his claim to continue. As the crutches were not prescribed, Huddleston did not interfere with Baze's medical treatment.

Dismissal of this claim is also appropriate since Baze cannot show the existence of a serious medical need to satisfy the objective component of the deliberate indifference analysis. "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)). KSP's medical staff is uniform in its diagnosis of Baze's knee problem as a minor strain and that the use of crutches was not part of the treatment. Hiland Aff. ¶¶ 3-5, DN 59-2 at 1; Hiland Aff. ¶¶ 3-4, DN 64-9 at 2; DN 64-5 at 2-6. The prison's medical staff indicated on several occasions that anti-inflammatory medication, ice, and rest were all that was required for the injury. Though Baze has gathered affidavits from his fellow death-row inmates painting a bleaker picture of his medical condition, these individuals are not medical professionals and simply affirm information that was relayed directly from Baze.

Furthermore, Baze offers no proof that Huddleston possessed a sufficiently culpable state of mind. *See Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The full weight of the record demonstrates that even if Baze was suffering from a serious medical condition that required the use of crutches, Huddleston was ignorant of that fact. After all, the very medical staff that gave Baze the crutches declares the injury was minor and that they relayed this diagnosis to Huddleston. Hiland Aff., DN 59-2; DN 64-4 at 4, 64-5 at 2-6; Hiland Aff., DN 64-9. Huddleston's affidavit reflects as much:

> To the best of my knowledge and belief, at no time was there any medical order that inmate Baze had to have crutches to walk or that he was restricted from any activity without crutches. The crutches were merely a convenience, provided at

this request.

Huddleston Aff. ¶ 13, DN 59-3 at 2.  Baze offers mere recitals that Huddleston knew of his condition and disregarded his injury, but these uncorroborated statements are insufficient to show Huddleston was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he . . . also [drew] the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The record does not reflect that Huddleston knew or had reason to know the crutches were an integral part of his medical care or that Baze was suffering from a serious medical condition.

## **II. ADA Claims**

In an earlier order, the Court permitted the ADA claims to continue against all defendants in both their individual and official capacities.  Memo. & Order, DN 10.  The Court therefore considers Baze's allegations as to each named Defendant.

As an initial matter, claims under the ADA are only actionable against entities or individuals in their official capacities.  *See Key v. Grayson*, 163 F. Supp. 2d 697, 715 (E.D. Mich. 2001) (collecting cases reaching such a conclusion); *Calloway v. Boro of Glassboro Dept. of Police*, 89 F. Supp. 2d 543, 556-57 (D.N.J. 2000) (same).  Thus, to the extent Baze offers individual capacity claims against Defendants, these are improper and hereby DISMISSED.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  To state a claim under the ADA, Baze must demonstrate he is "(1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being

excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of his or her disability." *S.S. v. Eastern Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846 (6th Cir. 1995)).  Summary judgment is proper because Baze cannot satisfy the first or third elements.

The injury Baze alleges does not qualify as a covered disability.  Congress wrote the ADA to protect persons with "'physical or mental impairment[s] that substantially limit[] one or more of the major life activities of an individual.'" *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 581 (6th Cir. 2007) (quoting 29 C.F.R. § 825.113(c)(2)).  So, where the condition is temporary, "it is not substantially limiting and . . . not a disability under the ADA." *Roush v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir. 1996) (kidney condition did not upset the litigant's "major life activity" and was not cognizable under the ADA); *accord Haralson v. Campuzano*, 356 F. App'x 692, 697-98 (5th Cir. 2009) (prisoner did not state claim under ADA where use of a wheelchair was not medically indicated or needed); *Hein v. All Am. Plywood Co., Inc.*, 232 F.3d 482, 487 (6th Cir. 2000) (hypertension did not qualify as disability where voluntary failure to take medication caused inability to work).  The medical record indicates Baze's injury was mild, healed over the course of a few weeks, and did not impede his day-to-day life.  This finding is corroborated by testimony that KSP staff saw Baze walking without assistance days after the injury.  Hiland Aff. ¶¶ 13-15, DN 59-2 at 1; Huddleston Aff. ¶¶ 14-15, DN 59-3 at 3.  He has not alleged an injury that qualifies as a disability under the ADA.

Next, even assuming Baze's knee strain was an impairment of his major life activities, he was not discriminated against because of this injury.  Rather, the record is clear that members of the KSP staff denied him the use of crutches based on security concerns.  Huddleston affidavit

8

reads as follows:

> 6) My reason for refusing to allow inmate Baze to take crutches into the SSU was that the crutches could easily be used as a weapon and their presence in the SSU, in the possession of inmate Baze, could compromise security and endanger both staff and other inmates.
> 7) In May of 2009, inmate Baze was one of the death row inmates closest to execution.
> 8) In addition, I was aware that inmate Baze's history including convictions for murdering two law enforcement officers to avoid arrest. The likelihood of assaults on staff or escape attempts are a very serious concern with such inmates.
> 9) In the [death row environment], every inmate is a serious security concern, because every inmate is a convicted murderer, with a death sentence and nothing to lose by committing additional crimes. The introduction of any potential weapon into that environment is a very serious security issue. With inmates sentenced to death, security is always a concern, because they have little or nothing to lose by committing additional crimes. This concern is even greater when the inmates have exhausted their appeal and are close to execution, like inmate Baze.

Huddleston Aff. ¶¶ 6-9, DN 59-3 at 2. Affidavits from the institution's doctors include similar language, indicating his crutches were taken away because the KSP staff was worried over the safety of the guards and the residents of death row. Hiland Aff. ¶ 5, DN 59-2 at 1.

Baze cannot establish a prima facie case under the ADA because he fails to show he was discriminated against on the basis of his knee strain. *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005) (plaintiffs must show discrimination followed solely as a result of their disability (citing *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003))). In fact, he concedes that Huddleston's motivation for precluding his use of the crutches was founded on security concerns and not some other discriminatory animus. *See* Pl. Resp. Brief, p. 10-11, DN 64 at 10-11; Pretrial Memo., DN 54 at 3. The concerns by prison officials of a death-row inmate constructing a weapon from crutches appear legitimate, as "courts are particularly 'ill equipped' to deal with [problems in prisons]" and therefore they have generally "deferred to the judgments of prison officials in upholding . . . regulations against constitutional challenge." *Shaw v.*

*Murphy*, 532 U.S. 223, 229 (2001) (quoting *Procunier v. Martinez*, 416 U.S. 396, 404 (1974)); *accord Wagner v. Jett*, 37 F.3d 1500, at *1 (6th Cir. 1994) (table) ("The courts must accord prison administrators wide-ranging deference in matters concerning the adoption and execution of policy and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). The focus on the safety of KSP staff and other prisoners was a legitimate, nondiscriminatory reason to deny Baze the use of crutches. For these reasons, his ADA claim fails.

### III. Equal Protection

Baze advances a violation of his rights under the Equal Protection Clause of the Fourteenth Amendment. This theory of recovery is premised on his allegations that until Huddleston prevented him from using crutches, other prisoners on KSP death row were allowed to use devices like crutches, walkers, and wheelchairs to aid in their mobility. Attached to his response are affidavits from many of Baze's fellow inmates on death row. DN 64-6 at 2-16. Most of the affidavits are generic forms indicating the affiant is unaware of any other inmate who was denied the use of crutches. A few include more detail where the inmates describe a specific injury they suffered and then swear they were permitted to use devices to aid their mobility.

The Equal Protection Clause provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To sustain an equal-protection claim, Baze must present evidence that Defendants intentionally discriminated against him because he was a member of a protected class. *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996). Baze is not a

member of a protected class. *See Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997) (inmates are not a suspect class). Thus, he may only succeed on a claim of equal protection if he can show he was treated differently than similarly situated individuals and there was no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990).

  Baze has failed to provide sufficient evidence that similarly situated prisoners were provided more favorable medical care. The vast majority of the affidavits are vague and conclusory, remarking only that the affiant is a prisoner and "to the best of [their] knowledge, Mr. Baze is the first inmate on [death row] that has been denied the use of crutches." DN 64-6 at 7-12. These documents do not assist Baze in his quest to show he was treated differently than similarly situated prisoners because no specific individuals are mentioned. Next, several affidavits include information that prisoners were provided crutches or walking devices, but after having suffered serious injuries like a broken ankle, broken leg, or rheumatoid arthritis. DN 64-6 at 15-16. These medical conditiotions are incongruent with Baze's minor ligament strain.

  Though Baze has managed to track down inmates who say they were given crutches with medical conditions analogous to his, he has not shown these individuals were as close to their execution as he was when he returned from the infirmary. The omission of this information in the inmates' affidavits precludes Baze from showing similarly situated prisoners were treated differently. *Reed v. Reed*, 404 U.S. 71, 76 (1971) (the Equal Protection Clause requires "'all persons similarly circumstanced shall be treated alike.'" (quoting *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920))).

  Huddleston's affidavit clarifies why proximity to a death sentence is an important

consideration to KSP staff. These prisoners "have little or nothing to lose by committing additional crimes." Huddleston Aff. ¶¶ 9, DN 59-3 at 2. Such concerns are only amplified when prisoners, like Baze, exhaust their appeals and are close to their executions. *Id.* Accordingly, Baze has not stated a claim for relief because the decision by KSP's staff to refuse him crutches was rationally related to a legitimate penological interest.[3] *Lopez v. Beard*, 333 F. App'x 685, 687 (3d Cir. 2009) (citing *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985)).

The prisoners who have submitted affidavits on his behalf are not similarly situated and Huddleston's affidavit indicates the confiscation of his crutches was rationally related to a legitimate interest. Baze has not articulated a set of facts upon which a reasonable jury could decide in his favor.

## IV. Retaliation

Baze makes a claim of retaliation under the First Amendment. Compl. ¶¶ 8-10, 49-50, DN 3 at 4, 9; Pl. Response Brief, DN 64 ¶¶ 23-25, p. 10. This theory of recovery is only cognizable against Huddleston since he is the only actor implicated in Baze's complaint and response to this motion. *See* Pl. Resp. ¶ 23-25, DN 64 at 10.

There are three elements to a retaliation claim under the First Amendment:

(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's

---

[3] Throughout his motion, Baze asserts the precautions by Huddleston and the other Defendants were unwarranted because he has been a model prisoner. His behavior while incarcerated leads Baze to believe the denial of his crutches cannot be rationally related to a penological interest because he is not a security risk. Such a position is untenable. The brutal crime for which Baze was convicted justifies the highest degree of security available. The guards at KSP were well within their rights to focus on his previous propensity for violence.

      protected conduct.

*Evans v. Vinson*, 427 F. App'x 437, 445 (6th Cir. 2011) (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). With respect to prisoners, an adverse action is "'an action comparable to transfer to administrative segregation,' or an 'action of lesser severity' that 'would 'deter a person of ordinary firmness' from the exercise of the right at stake.'" *Id*. at 446. A causal connection is established where the "protected conduct was a 'motivating factor' in the adverse action." *Id*. (citing *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

      The parties' motions address two divergent bases for a First Amendment claim of retaliation. Defendants focus on a claim by Baze in his complaint that he was confined to the infirmary against his will when he was escorted back to return his crutches. Complaint, DN 3 ¶¶ 49-50. Regarding this assertion, Defendants pose a logical fallacy within this claim, arguing since Baze chose to give up his crutches and return to his cell, he was not confined to the infirmary, did not lose the ability to participate in various activities, and did not suffer an adverse action. Baze promotes a different narrative. He alleges that after he received the crutches from the infirmary and returned to his cell block, Huddleston limited their use to his cell. DN 64 ¶¶ 23-25, p. 10. Only after Baze threatened to sue for these restrictions did Huddleston have him removed to the infirmary, where Baze was given the option to remain with the crutches or return to his normal accommodations. The threat to move him to the infirmary is the retaliation for which Baze seeks redress.

      The record surrounding the retaliation claim is, at best, vague. Huddleston admits in a response to Baze's grievance that he initially allowed Baze the opportunity to use the crutches in

13

his cell but denied him entry into the exercise yard. DN 64-2 at 2; DN 64-4 at 4. The affidavit Huddleston has attached to this motion omits whether he initially cleared Baze to have the crutches in his cell. Huddleston Aff., DN 59-3. The document instead picks up with Baze's refusal to enter the infirmary and his decision to return to KSP death row. Huddleston Aff. ¶¶ 3-5, DN 59-3 at 1. Other than Baze's own assertions in the complaint and his response, no record exists of his threat to sue Huddleston for imposing the limitation. The Court does not know the length of time between the conversation and the alleged retaliation, if other guards or prisoners overheard this argument, or whether Huddleston was even a party to these statements.

The current record prevents the Court from evaluating this final claim. Baze provides nothing more than conclusory opinions while Huddleston fails to address the issue entirely. Until the litigants provide the Court with a more thorough narrative on the alleged conversation and Baze's threat to sue Huddleston, it cannot determine whether there is sufficient evidence to survive summary judgment. The Court will therefore temporarily deny this part of the motion. Huddleston will be provided 30 days from the issuance of this order to file a second motion for summary judgment regarding Baze's claim of retaliation in violation of the First Amendment. Baze will be permitted 30 days to respond. The Court will then make its ruling.

### V. Qualified Immunity

Defendants say that even disregarding the above-stated analysis they are entitled to qualified immunity. Baze contests this assertion, arguing Defendants' violations of the Constitution prevent dismissal under this doctrine.

Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established

14

statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The oft-quoted inquiry requires the Court to ask the following: "[u]nder the facts alleged or shown by the plaintiff, whether (1) the defendant violated the plaintiff's constitutional rights; and (2) if so, those rights were clearly established at the time." *Haley v. Elsmere Police Dept.*, No. 10–6176, 2011 WL 6275914, at *2 (6th Cir. Dec. 15, 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

With respect to the alleged violations of the Eighth Amendment and Due Process Clause, Defendants are entitled to qualified immunity. Baze has not demonstrated he received deliberately indifferent medical care or he was treated differently than similarly situated inmates on death row. Ergo, Defendants enjoy this alternative basis for summary judgment. Nevertheless, the lack of proof on the retaliation claim prohibits the Court from deciding whether Huddleston is entitled to qualified immunity. The Court will withhold its decision on the application of this doctrine until the second motion for summary judgment.

## CONCLUSION

IT IS ORDERED THAT:

(1) Defendants' motion for summary judgment is GRANTED IN PART. Plaintiff's claims under the Eighth Amendment, the Americans with Disabilities Act, and the Equal Protection Clause are hereby DISMISSED as to all Defendants in this matter. Insofar as the First Amendment retaliation claim was alleged against Defendants Tom Simpson, LaDonna Thompson, Duke Pettit, and the Kentucky Departmen t of Corrections, Plaintiff has failed to state a cognizable claim against these parties and they are hereby DISMISSED from this action.

(2) Defendants' motion for summary judgment is DENIED IN PART. The parties have not adequately addressed Plaintiff's First Amendment retaliation claim, specifically, that Defendant Hobert Huddleston threatened to place Plaintiff in the infirmary after he informed Defendant of a potential lawsuit. The Court will permit the parties to offer additional information on this claim to determine whether it should proceed to trial.

(3) Defendants shall file another motion for summary judgment within 30 days of this order further detailing Plaintiff's claim for retaliation. Plaintiff shall respond within 30 days of this renewed motion. The Court will then consider these renewed arguments and issue its ruling.