UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:10-CV-00086-R

**RALPH BAZE**                                                                 **PLAINTIFF**

v.

**HOBERT HUDDLESTON, et al.**                                   **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' renewed motion for summary judgment (DN 69). Plaintiff has responded (DN 70) and Defendant has replied (DN 73). This matter is now ripe for adjudication. For the reasons that follow, Defendants' motion is GRANTED. This matter is hereby dismissed.

## BACKGROUND

Plaintiff Ralph Baze, *pro se*, is a prisoner currently incarcerated at Kentucky State Penitentiary (KSP). Baze is on Kentucky's death row and has exhausted his direct appeals; both parties admit that he is very near his execution. On May 19, 2009, Baze alleges he twisted and injured his knee. The next day, he was examined by KSP's medical staff and diagnosed with a minor strain. The medical staff told him to rest the knee and gave him non-prescription anti-inflammatories. KSP's staff allowed him to use a set of crutches as a convenience to take weight off his knee. When Baze returned to death row, the area's supervisor Hobert Huddleston initially permitted Baze to use his crutches in his cell but prohibited their use in other parts of death row out of fear they could be used as a weapon.

Upon learning of these restrictions, Baze informed KSP staff that he would take legal action for limiting his use of the crutches. Shortly thereafter, Baze was escorted back to the

infirmary where he was given the option to remain with the crutches or to return to death row without them. Baze opted to return to his cell since inmates confined to the infirmary do not have access to KSP's other facilities.

Baze brought this suit alleging a variety of constitutional and statutory claims. On January 17, 2012, the Court granted Defendants' motion for summary judgment in part, dismissing all theories of recovery except a First Amendment claim of retaliation. Memorandum Opinion & Order, DN 67. The Court stated that the parties had not adequately described this cause of action and requested additional information.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for

summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

The Court has pieced together the following narrative for Baze's claim of retaliation. He alleges that when he returned to death row, guards informed him that his use of crutches would be restricted to his cell. Baze told the guards that he would sue for not allowing him unlimited use of the crutches. Two minutes after this threat, Baze was escorted to the prison infirmary where he was given the option to remain with the crutches or return to his normal accommodations. Baze initially chose to stay in the infirmary but after fifty minutes he decided to return to death row.

Prisoners submitting statements on Baze's behalf affirm that prison life in the infirmary is different than the general prison population. Inmates confined to the infirmary have no access to church services, the chaplain, the law library, or outside recreation. Baze insists the threat to remove him from his normal cell block and transfer him to the infirmary was an adverse action capable of supporting a First Amendment claim of retaliation.

In the first motion for summary judgment, the Court determined that the medical staff at KSP did not prescribe the crutches and offered them to Baze as a convenience. The Court also concluded KSP's staff had legitimate concerns about the potential for Baze to fashion a weapon from the crutches. Huddleston recounted that Baze was the closest prisoner to execution when the decision was made to constrict his movement. Huddleston Aff. ¶¶ 6-9, DN 59-3 at 2. Under

3

those conditions inmates could be unpredictable and dangerous. Huddleston Aff. ¶¶ 6-9, DN 59-3 at 2. Affidavits from the institution's doctors corroborated that the crutches were confiscated because KSP staff harbored safety concerns. Hiland Aff. ¶ 5, DN 59-2.

Huddleston has submitted another affidavit with this renewed motion for summary judgment. DN 69-2. Although Baze decided against staying in the infirmary, Huddleston proclaims he never rescinded the earlier order that Baze could continue to use the crutches in his cell. DN 69-2 ¶ 9. Huddleston insists the transfer to the infirmary was for Baze's benefit because it would allow increased use of the crutches. DN 69-2 ¶ 9.

There are three elements to a prisoner retaliation claim under the First Amendment:

(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Evans v. Vinson*, 427 F. App'x 437, 445 (6th Cir. 2011) (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). With respect to prisoners, an adverse action is "'an action comparable to transfer to administrative segregation,' or an 'action of lesser severity' that 'would 'deter a person of ordinary firmness' from the exercise of the right at stake.'" *Id*. at 446. A causal connection is established where the "protected conduct was a 'motivating factor' in the adverse action." *Id*. (citing *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Neither party disputes Baze's statement that he would file a lawsuit qualifies as protected speech. *See Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (the First Amendment protects a prisoner's right to file grievances against a prison official (citing *Herron v. Harrison*, 203 F.3d

4

410, 415 (6th Cir. 2000))). Rather, Huddleston contends no material fact exists capable of showing Baze suffered an adverse action. He says Base's fifty minutes in the infirmary constitutes a de minimis action even if retaliatory in nature. Huddleston continues that besides the temporal nexus between Baze's statements and the decision to transport him to the infirmary no evidence exists of a causal connection between the remarks and the adverse action.

For First Amendment retaliation claims, a prisoner must show the adverse action was "capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Hill*, 630 F.3d at 472 (citing *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009)). With the inherent issues of security within correctional institutions, prisoners do not have a constitutionally-protected right to remain at a facility or a particular part of a facility. *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576 (D.C. Cir. 2002). "[A] prison transfer or the threat of a transfer can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner." *Hill*, 630 F.3d at 474 (citing *Siggers–El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005)). Adverse action cannot follow from de minimis harm; a prisoner must demonstrate that the retaliatory act was punitive in nature and caused a constitutionally cognizable injury. *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005). "[I]f no reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his rights, then the act should be characterized as de minimis and dismissed at the summary judgment stage." *Id*.

The stay in the infirmary is legally insufficient for a claim of retaliation. Baze was in the infirmary only fifty minutes, after which, KSP staff moved him back to death row. Even if the activities available to prisoners in the infirmary are minimal, there is no indication Baze was

5

affected by these restrictions.  Furthermore, Baze's placement in the infirmary cannot be characterized as a "transfer" in light of its duration.  Courts have repeatedly held that the Constitution's protections are not frustrated by temporary reassignments in prison.  *See, e.g.*, *Morris v. Powell,* 449 F.3d 682, 685-86 (5th Cir. 2006) (one-week job reassignment from commissary to kitchen was not sufficiently adverse for actionable claim of retaliation since it was only a "few days of discomfort"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (prisoner being forced to sleep on floor for one night because of overcrowding was a "temporary situation" and therefore not actionable); *Lamb v. Crites*, No. CV-11-027, 2012 WL 130371, at *10-11 (S.D. Tex. Jan. 14, 2012) (two-hour cell reassignment would not deter person of ordinary firmness); *Toolasprashad v. Bureau of Prisons*, No. 09-CV-5335, 2009 WL 5103185, at *5 (D.N.J. Dec. 17, 2009) (where prisoner was transferred to landscaping job for one hour but returned to janitorial staff, such action "could hardly be characterized" as retaliatory).  Fifty minutes in the infirmary is insufficient to trigger Baze's First Amendment rights.

      Baze also fails to present proof to establish an inference that his statements to Huddleston were a motivating factor in moving him to the infirmary.  A prisoner is required to come forward with evidence on "whether the defendants' subjective motivation for taking the adverse action was at least in part to retaliate against the prisoner for engaging in protected conduct."  *Hill*, 630 F.3d at 475 (citing *Thaddeus–X*, 175 F.3d at 399).  A "motivating factor" is "one without which the action being challenged simply would not have been taken."  *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002).  "If the prisoner can show that the defendants' adverse action was at least partially motivated by the prisoner's protected conduct, then the burden shifts to the

defendants to show that they would have taken the same action even absent such protected conduct." *Hill*, 630 F.3d at 475 (citing *Thaddeus–X*, 175 F.3d at 399).

The present record fails to establish a causal nexus between Baze's protected speech and the alleged retaliatory acts. Though Baze's temporary reassignment to the infirmary may have occurred after his objections to the restrictions, temporal proximity by itself is not enough to show the protected speech was a substantial and motivating factor for a transfer. *Reynolds-Bey v. Harris*, 428 F. App'x 493, 505 (6th Cir. 2011); *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001). To succeed on a motion for summary judgment, a prisoner asserting a claim of retaliation must set forth "specific, nonconclusory allegations [of retaliation]." *Thaddeus–X,* 175 F.3d at 399. Baze presents nothing more than his own conclusory opinions on causation. Huddleston's affidavit and the sworn statements of the medical staff underscore that Baze was moved to the infirmary for both security concerns and to allow him greater freedom to use the crutches. *See* Huddleston Aff., DN 69-2; Huddleston Aff., DN 59-3; Hiland Aff., DN 59-2; DN 69-2. Baze's bare allegations regarding Huddleston's retaliatory motives are legal conclusions without any factual support.

In his response to the second summary judgment motion, Baze proposes a new basis for his First Amendment claim - Huddleston's decision to confiscate his crutches after he left the infirmary and returned to death row was retaliatory. Baze's complaint originally sought redress for his placement in the infirmary after he indicated he would sue. *See* Complaint, DN 3 ¶¶ 48-50. Because he has not pursued this theory from the outset, the Court need not consider its implications. *See Gomez v. LSI Integrated LP*, 246 F. App'x 852, 854 (5th Cir. 2007) (declining to consider a claim that was not pursued by litigant before summary judgment response); *Roeder*

7

*v. Am. Postal Workers Union, AFL-CIO,* 180 F.3d 733, 737 n. 4 (6th Cir. 1999) (refusing to consider unpled theory of recovery asserted for the first time in response for summary judgment). Even if the Court were to evaluate this new wrinkle, Baze ignores the uncontroverted evidence that the crutches were not a prescribed part of his medical treatment. The requisition of crutches that are not medically unnecessary cannot form the foundation of a retaliation claim. *See Evans*, 427 F. App'x at 445 (adverse action must be sufficiently severe to deter a person of ordinary firmness).

## CONCLUSION

Overall, Defendants' objections to this claim are well founded. For the foregoing reasons, the Court GRANTS Defendants' second motion for summary judgment (DN 69). The Clerk of Court is directed to STRIKE this matter from the active docket. An appropriate order shall issue.